# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

TYRONE D. BLACKSHEAR SR.,

      Petitioner,

v.                                                   Case No. 3:19-cv-1115-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

I.   **Status**

Petitioner, Tyrone D. Blackshear, Sr., an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. He challenges a state court (Clay County, Florida) judgment of conviction for two counts of lewd or lascivious battery and one count of lewd or lascivious molestation. Petitioner is serving a cumulative twenty-year term of incarceration to be followed by a ten-year term of sex offender probation. Respondents filed a

Response. <u>See</u> Doc. 7 (Resp.).[1] Petitioner filed a Reply. <u>See</u> Doc. 10. This case is ripe for review.[2]

## II.   <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u>

---

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

3

AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> [at 102] (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>,

466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

This two-part Strickland standard also governs a claim of ineffective assistance of appellate counsel. Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)); see also Burger v. Kemp, 483 U.S. 776, 784 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

Id.; see also Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) ("failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong of an ineffective assistance of appellate counsel claim, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004); see also Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal"). Also,

> [a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. As such, "[a]ppellate counsel might fail to identify a mediocre or obscure basis for reversal without being ineffective under Strickland." Overstreet, 811 F.3d at 1287 (citation omitted).

For both claims of ineffective assistance of trial counsel and appellate counsel, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id.

6

(citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.  <u>Analysis</u>

### A. Ground One

Petitioner argues that his appellate counsel was ineffective for failing to raise on direct appeal a claim that the trial court erred in allowing the state to present <u>Williams</u>[3] Rule evidence at trial. Doc. 1 at 6.

Similar fact evidence, also known as "collateral crime evidence" or <u>Williams</u> Rule evidence, is evidence that points to the commission of a separate crime, and is admissible if relevant for any purpose except the demonstration of bad character or propensity. <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959). Pursuant to section 90.404, Florida Statutes, "evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." <u>See also</u> Fed. R. Evid. 414. In assessing whether such evidence is relevant, the trial court should evaluate: "(1) the similarity of the prior acts to the act charged regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; (2) the closeness in time of the prior acts to the act charged; (3) the frequency of the prior acts; and (4) the presence or lack of intervening circumstances." <u>McLean v. State</u>, 934 So. 2d 1248, 1262 (Fla. 2006).

---

[3] <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959).

8

In a Third Amended Information, the state charged Petitioner with two counts of sexual battery by a person in familial or custodial authority and one count of lewd or lascivious molestation. Resp. Ex. E at 2. The victim named in each count was one of Petitioner's stepdaughters – D.C. Id. Before trial, the state filed a notice, pursuant to section 90.404(2), advising that it intended to introduce the testimony of two witnesses – L.C. (D.C.'s older sister) and R.H. (Petitioner's former stepdaughter from prior marriage) – who would testify that Petitioner also sexually abused them. Resp. Ex. A at 31-32. The trial court conducted a hearing on the state's request, during which it heard testimony from the two Williams Rule witnesses, the mothers of the Williams Rule witnesses, Petitioner's mother, and Petitioner's brother. See Resp. Exs. A at 189-200, B at 201-86. The trial court then denied the state's request as to R.H. but granted the request to present the testimony of L.C.

> THE COURT: . . . . Everybody here is quite familiar with the factors that I'm suppose[d] to access [sic]. Obviously clear and convincing is the standard and also [I'm] suppose[d] to weigh probative value and prejudicial effect . . . .
>
> In determining probative value I'm suppose[d] to determine if there is significant points of similarity and based on the evidence that I've heard as to [L.C.], I find that there is – it does satisfy the clear and convincing standard. There are significant points of similarity; where the acts occurred and the way the acts occurred and that the age of the victims and the fact that they followed one and the other as well as the frequency of the acts.

9

> Therefore I'm ruling that as to [L.C.] the probative value does outweigh any potential prejudicial effect nor do I believe that it would become a feature of the trial. And as to [R.H.], I think -- well, first of all, I'm not sure that it establish [sic] by clear and convincing evidence, but I need not decide that because I determined that with all of the potential impeachment of the witnesses that would be necessitated by [R.H.]'s testimony that that -- clearly she's going to become a feature of the trial. And I think it's going to distract the jury from essential issues in this case which is the defendant's guilt or innocence.
>
> So [L.C.]'s testimony is coming in, [R.H.]'s is not.

Resp. Ex. B at 285-86. Defense counsel objected to the trial court's ruling, arguing the facts of the alleged prior bad acts involving L.C. were not substantially similar to the alleged acts involving D.C. Id. at 287-88. The trial court responded:

> THE COURT: I have noted those arguments. Obviously both McLean case and progeny clearly articulated that in sexual molestation crimes that are both intrafamilial or extrafamilial that there's a relaxed standard. There is one case, Potts [v.] State[,] 427 So. 2d 822 where the Williams Rule evidence was two different victims -- two separate victims who testified about events that occurred 12, 18 years before the trial. I don't think that is a significant factor as far as the timeframe.
>
> Obviously, this defendant is not only charged with penile and digital penetration but he's also charged in the information with lewd and lascivious acts that [are] similar to the conduct that is alleged to have occurred with [L.C.]. Those objections are overruled . . . .

<u>Id.</u> at 288-89. The state then asked the trial court to reconsider the exclusion of R.H.'s testimony and suggested it could prevent that evidence from become a feature at trial by limiting R.H.'s testimony or having the trial court instruct the jury that her statements should not become a feature at trial. <u>Id.</u> at 289. The trial court disagreed:

> THE COURT: Well, here is the problem Ms. Ellis. I understand the state really would love to have Ms. H[] testify but the instant you put her on the stand and she says he had me in the den on top of him grinding him, then the defense is going to be pulling about ten witnesses to impeach her credibility, including the fact that she's a serial accuser. That is clearly going to become a feature of the trial, and I'm not going to allow that to happen. So [R.H.] is not testifying.

<u>Id.</u> at 290.

At trial, the victim, D.C., testified that when she was eleven or twelve, Petitioner began sexually abusing her and continued to do so until she was thirteen or fourteen. Resp. Ex. B at 317. According to D.C., Petitioner always abused her inside their home, typically upstairs, sometimes sitting her on his lap and "grinding" her back and forth or touching her breasts and vagina. <u>Id.</u> at 318-19. The last time Petitioner abused her was in December 2009. <u>Id.</u> at 319. D.C. was cleaning her room when Petitioner pulled D.C. into the upstairs bathroom, pulled off her clothing, and digitally penetrated her vagina. <u>Id.</u> at 320-22. During the incident, D.C.'s sister, who was also in the home, called out D.C.'s name looking for her. <u>Id.</u> at 323. In response, Petitioner told L.C. that

D.C. would be down soon, told D.C. to put her pants back on, and told D.C. to go downstairs. Id. at 323-24. Once downstairs, D.C. told L.C. what happened because L.C. suspected that Petitioner was abusing D.C. Id. at 33. L.C. and D.C. then immediately reported the abuse to their mother. Id. at 324.

Before L.C. testified at trial, the trial court instructed the jury that L.C.'s testimony should be considered only as it related to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or corroboration, and clarified that Petitioner was not being tried for any crime not included in the Information. Id. at 351-52. L.C. then testified that she is seventeen years old, D.C. is her younger sister, and Petitioner is their stepfather. Id. at 354. According to L.C., when she was younger, Petitioner also sexually abused her. Id. She explained that he began abusing her when she was seven or eight years old, and she was thirteen years old the last time he abused her. Id. at 356. She explained that Petitioner "touched and groped" her breasts and vagina more than once, and sometimes sat her on his lap in a straddling position while "grind[ing] up and down." Id. at 355-56. The abuse always occurred inside their home. Id. at 356. According to L.C., she finally told someone about the abuse when she learned that Petitioner was also abusing D.C. Id. at 361.

D.C. and L.C.'s mother testified that she eventually left the home that she and Petitioner lived in and took her children to The Quigley House where

they reported the abuse. Resp. Ex. C at 401-02. The Department of Children and Families was then notified, and a Child Protective Team member interviewed both daughters. Id. at 402-03. Police were also notified and following the DCF and CPT interviews, Petitioner was arrested. Id. at 435-37. Following closing arguments, the jury found Petitioner guilty of two counts of the lesser included offenses of lewd or lascivious battery and one count of lewd or lascivious molestation as charged in the Information. Id. at 262. Petitioner appealed and the First District Court of Appeal per curiam affirmed his judgment and convictions. Resp. Ex. I.

Petitioner then filed a petition with the First DCA alleging ineffective assistance of appellate counsel. Resp. Ex. J. In the petition, Petitioner argued that his appellate counsel was ineffective for not raising on direct appeal a claim that the trial court erred in permitting the Williams Rule evidence because: the trial court applied the wrong standard; L.C.'s testimony was not similar to the charged offenses; the admission of the evidence was not harmless as it was not offered to corroborate D.C.'s testimony; and the state improperly relied on the evidence to prove its case. Id. at 9-17. The state filed a response outlining the similarities in D.C.'s and L.C.'s testimonies, including their ages at the time of the abuse, familial relationship, location of abuse, as well as the type and nature of abuse. Resp. Ex. L. The state also argued that the trial court properly applied the McLean standard in assessing admissibility; and before the presentation of

L.C.'s trial testimony, it instructed the jury that her testimony was to be considered for only a limited purpose and the parties must assume the jury followed that instruction when it considered L.C.'s statements during deliberations. Id. As such, the state argued that appellate counsel did not act deficiently in failing to raise this issue on appeal as it would have been meritless. Id. The First DCA denied the petition on the merits. Resp. Ex. N.

Here, Petitioner again challenges the admissibility of this Williams Rule evidence and raises the same ineffective assistance of appellate counsel claim. Doc. 1 at 6. First, "[a]s a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," because the state court "has wide discretion in determining whether to admit evidence at trial[.]" Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994); see also Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1985) (federal habeas corpus is not the proper vehicle to correct evidentiary rulings); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court unless rulings deny petitioner fundamental constitutional protections). Thus, Petitioner's underlying challenges to the state court's determination on the admissibility of the Williams Rule evidence is not generally proper for this Court's consideration.

Second, to the extent that Petitioner challenges appellate counsel's failure

to raise this issue during his direct appeal, the First DCA's adjudication of this claim is entitled to AEDPA deference. And the Court gives considerable deference to appellate counsel's strategic decision of selecting the issue or issues to raise on appeal. The danger of raising weaker issues in a "kitchen-sink" approach is that it detracts from the attention an appellate court can devote to the stronger issues and reduces appellate counsel's credibility. See Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989); see also McBride v. Sharpe, 25 F.3d 962, 973 (11th Cir. 1994). Thus, effective appellate attorneys "will weed out weaker arguments, even though they may have merit." Philmore, 575 F.3d at 1264; see also Overstreet, 811 F.3d at 1287. Appellate counsel's failure to raise a meritless or weaker issue does not constitute deficient performance. See Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)); Owen, 568 F.3d at 915. Prejudice results only if "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1264-65.

The Court defers to the state court's finding that the evidence was similar to the charged crimes and supported the victim's testimony. Also, the trial court's instruction advising the jury that the evidence was to be considered only for a limited purpose reduced any potential risk that the evidence would become a feature at trial. Thus, Petitioner has not shown that the outcome of his appeal would have been different if appellate counsel challenged the Williams Rule

ruling. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground One is denied.

### B. Ground Two

Petitioner argues that his trial counsel was ineffective for failing to object when the trial court erroneously instructed the jury on Florida Standard Jury Instruction 3.9(e). Doc. 1 at 11. According to Petitioner, this instruction misled the jury into believing that Petitioner made incriminating statements during a custodial interrogation when Petitioner did not make any incriminating statements during his police interview. <u>Id.</u>

Petitioner raised this claim in ground two of his pro se Florida Rule of Criminal Procedure 3.850 motion. Resp. Ex. P at 18-22. The trial court summarily denied the claim on the merits, finding as follows:

> In Ground Two, Defendant argues counsel was ineffective for failing to object to the reading of Florida Standard Jury Instructions Criminal § 3.9(e)[FN2] related to statements made by a defendant. Defendant argues the instruction was inapplicable because there was no introduction during the trial of an out of court statement made by Defendant.
>
> After reviewing Defendant's allegations and the record, the Court finds that, contrary to Defendant's contention, during the trial several statements were

claimed to have been made by Defendant. The victim testified to the following statements made by Defendant:

> Q. And did he ever say anything to you?
>
> A. He said, this feels good.
>
> . . .
>
> Q. All right. So what happened after you saw him seated on the couch?
>
> A. He told me to come here and then he stood up.
>
> . . .
>
> Q. Okay. Now, did he say anything else?
>
> A. Yes, he said to pull up my pants and go downstairs.
>
> . . .

In reading the instructions to the jury, the trial court stated the following:

> A statement claimed to have been made by the defendant outside of court has been placed before you. Such a statement should always be considered with caution and be weighed with great care to make ceratin [sic] it was freely and voluntarily made. Therefore, you must determine from the evidence if the alleged statement was knowingly, voluntarily, and freely made.

> In making this determination, you should consider the total circumstances, including but not limited to: One, whether, when the defendant made the statement, he had been threatened in order to get him to make it. And two, whether anyone had promised him anything in order to get him to make it. If you conclude the out of court statement is not freely and voluntarily made, you should disregard it.
>
> The Court finds no error in including the jury instruction regarding a defendant's statements. Statements purported to be made by Defendant were placed before the jury during trial and the trial court, in reading the instruction, followed the language of the standard jury instruction. <u>See</u> Fla. Std. Jury Instr. (Crim.) 3.9(e) (2012). Thus, counsel was not deficient for failing to object to a jury instruction that was applicable in this case. <u>See</u> <u>Johnson</u>, 921 So. 2d at 509. Accordingly, no relief is warranted on Ground Two.
>
> [FN2] In 2013, the instruction was amended and changed from 3.9(e) to 3.9(b).

Resp. Ex. P at 221-23 (record citations omitted). Petitioner appealed the trial court's denial, Resp. Ex. Q at 6-9, and the First DCA per curiam affirmed the denial without a written opinion, Resp. Ex. S.[4] As such, the Court addresses the

---

[4] Prior to denying Petitioner's Rule 3.850 motion, the trial court conducted an evidentiary hearing on some of Petitioner's claims. Resp. Ex. P at 137. For purposes of this Order, Petitioner properly exhausted all his ineffective assistance of trial counsel claims by briefing all the claims in his appellate brief following the trial court's denial. Resp. Ex. Q at 6-9. <u>See</u> Fla. R. App. P. 9.141(b)(3)(C) (requiring the filing of an initial brief after the grant or denial of a Rule 3.850 motion if an evidentiary hearing was held on one or more claims); <u>Atwater v. Crosby</u>, 451 F.3d 799, 809-10 (11th Cir. 2006) ("Pursuant to state procedural rules, abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing.").

claim in accordance with the deferential standard for federal court review of state court adjudications.

In doing so, the Court heeds and defers to the state court's conclusion that the inclusion of this jury instruction did not affect the outcome of Petitioner's trial; and thus, Petitioner has failed to show prejudice under <u>Strickland</u>. In Florida, "trial counsel's failure to object to standard jury instructions that have not been invalidated by [the Florida Supreme Court] do[] not render counsel's performance deficient." <u>Thompson v. State</u>, 759 So. 2d 650, 665 (Fla. 2000). The jury instruction at issue, Florida Standard Jury Instruction 3.9(b), explains how the jury can weigh the credibility of a defendant's out of court statements.[5] It is included in the Florida Supreme Court's standard final instructions for criminal cases, and when the trial court read the instruction in Petitioner's case, it followed the standard language verbatim. Resp. Ex. A at 99. Petitioner here argues that this instruction was created to help the jury weigh the credibility of statements a defendant makes during police interrogations or custodial interviews and because Petitioner never made any statements during his police interrogation and no such statements were presented during trial, the inclusion of the instruction misled the jury.

---

[5] As noted in the trial court's order, in 2013, following Petitioner's trial, Florida Standard Jury Instruction 3.9(e) was amended and changed to subsection 3.9(b). <u>See</u> Fla. Std. Jury Instr. (Crim.) 3.9(b) (2013).

While Petitioner may be correct about the main purpose of the instruction and that it may have been unnecessary to include it in his case, his allegation that its inclusion affected the outcome of his trial is speculative at best. Indeed, considering the totality of the evidence, as well as the jury instructions as a whole, the Court cannot find that but for trial counsel's alleged error, the outcome of his trial would have been different. Under the deferential standard of AEDPA review, the state court's adjudication of this claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. <u>See</u> 28 U.S.C. § 2254(d). Ground Two is denied.

### C. Ground Three

Petitioner argues that his trial counsel was ineffective for failing to object and move for a mistrial when the prosecutor impermissibly commented during his closing arguments about Petitioner's right to remain silent. Doc. 1 at 12.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. P at 23-28. The trial court ordered an evidentiary hearing on this issue and appointed postconviction counsel to represent Petitioner at the evidentiary hearing. <u>Id.</u> at 138-208. During the hearing, the trial court considered testimony from Petitioner and his trial attorney, Jennifer Love. <u>Id.</u> Following the hearing, the trial court denied the claim as follows:

In Ground Three, Defendant argues counsel was ineffective for failing to object and move for mistrial as to the prosecutors' improper statements made during closing argument on Defendant's failure to testify. In particular, Defendant cites to the following comments, which the Court will address as comments one, two, and three:

### Comment One

Again, you have the testimony of [D.C.] and we're gonna talk about her testimony in depth, but its uncontradicted at this point. She has told you what he did to her in the bathroom. You have no other testimony or evidence to the contrary.

### Comment Two

You all said that what happens is there anyone who would or could not convict unless there was testimony or evidence other than the victim's word.

### Comment Three

You might feel that you have to reconcile everything you heard from the witness stand but you don't. You don't. It's solely your decision to decide what evidence you're going to believe in this case. So you don't have to reconcile what anybody says, anybody else's testimony to the girl's testimony especially if you don't find that other person reliable. If you don't want to believe anyone in the case, you don't have to. There is no defense to the abuse that the defendant imposed on the girls. There is no excuse. There is no alternate theory.

After reviewing Defendant's allegations, State's response, the testimony and evidence presented at the

May 24, 2017 evidentiary hearing, and the record, the Court finds Defendant has failed to establish that counsel was ineffective for failing to object and move for mistrial based on the prosecutor's comments. "Commenting on the defendant's exercise of his right to remain silent is serious error." Rimmer, 825 So. 2d at 322. Florida has "a very liberal rule for determining whether a comment constitutes a comment on silence: any comment which is 'fairly susceptible' of being interpreted as a comment on silence will be treated as such." DiGuilio, 491 So. 2d at 1135. Allegations that a prosecutor improperly commented on a defendant's right to remain silent should be evaluated in context rather than isolation. Jones, 867 So. 2d at 400; Whigham, 97 So. 3d at 276. "[W]here the evidence is uncontradicted on a point that only the defendant can contradict, a comment on the failure to contradict the evidence becomes an impermissible comment on the failure of the defendant to testify." Rodriguez v. State, 753 So. 2d 29, 38 (Fla. 2000).

With regard to comments one and three, the Court finds that viewed in context, these comments were an invited response based on the defense's questioning of witnesses throughout trial, and closing arguments purporting that the story was concocted by the victim, her sister, and her mother. [S]ee Poole v. State, 997 So. 2d 382, 390 (Fla. 2008) (finding comments regarding Defendant's lack of evidence were invited responses and thus not improper); Brown v. State, 771 So. 2d 603, 605 (Fla. 4th 2000) ("A narrow exception to the rule forbidding a comment on a defendant's failure to testify applies where the prosecution's statement is invited by the defense.").

Moreover, even if the comments are considered improper, the Court finds that Defendant has failed to establish prejudice. In order for improper prosecutorial comments to require a mistrial, the comments must:

> either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.

Walls v. State, 926 So. 2d 1156, 1167 (Fla. 2006) (quoting Spencer v. State, 645 So. 2d 377, 383 (Fla. 1994)). The Court finds that Defendant has failed to establish that comments one and three meet this level. See Jones v. State, 998 So. 2d 573, 589 (Fla. 2008).

> With regard to comment two, the Court finds that viewed in context, the prosecutor was not referencing the lack of contradicting evidence or testimony on Defendant's part, but whether or not the jury would convict when there was only the victim's testimony and no other testimony or evidence to support the victim's testimony. Therefore, the prosecutor's comment was not fairly susceptible of being interpreted as a comment on Defendant's right to remain silent and counsel cannot be deemed ineffective for failing to object to the comment and move for mistrial on this basis. See generally Bell v. State, 108 So. 3d 639, 651 (Fla. 2013) (finding the prosecutor's comments during voir dire were not fairly susceptible of being interpreted as referring to the defendant's failure to testify where the prosecutor's comments were "designed to ascertain whether any potential juror might be inclined to discount the testimony of a witness simply because the witness was a child."). Accordingly, no relief is warranted on Ground Three.

Resp. Ex. P at 223-25 (record citations omitted). Petitioner appealed this issue, Resp. Ex. Q at 9-14, and the First DCA per curiam affirmed the denial without a written opinion, Resp. Ex. S. As such, the Court addresses the claim in

accordance with the deferential standard for federal court review of state court adjudications.

In applying such deference, the Court heeds the state court's finding that the allegedly improper prosecutorial statements, in context, did not affect the outcome of Petitioner's trial. Indeed, a reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire argument and the trial as a whole, because "[c]laims of prosecutorial misconduct are fact-specific inquiries which must be conducted against the backdrop of the entire record." United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995); accord United States v. Young, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

Here, Petitioner again relies on the same comments discussed in the trial court's order and argues these comments amounted to improper references to Petitioner's Fifth Amendment right to not testify at trial.[6] Doc. 10 at 17. The Court reviewed the state's closing and rebuttal arguments and agrees that

---

[6] In his Reply, Petitioner argues that Respondents erroneously suggest that he is only challenging three comments when he is challenging seven comments. Doc. 10 at 17. But the seven comments Petitioner challenges are all contained within the three excerpts discussed in the state court's order denying his Rule 3.850 motion. Id.

these comments, taken in their proper context, were not impermissible comments on Petitioner's right to remain silent. <u>See</u> Resp. Ex. C at 471-72, 475-76, 529; <u>see also</u> <u>United States v. Blankenship</u>, 382 F.3d 1110, 1128 (11th Cir. 2004) (a prosecutor's statement violates a defendant's right to remain silent if it was "manifestly intended to be a comment on the defendant's failure to testify" or was "of such a character that a jury would naturally and necessarily take it to be a comment" on the defendant's failure to testify). When making the arguments outlined in "comment two," the state was arguing that the victim's testimony satisfied all the elements of the offenses and that the jury could rely on only that evidence to find Petitioner guilty. Resp. Ex. C at 182. And as to "comment one" and "comment three," the state made those arguments in rebuttal to defense counsel's cross-examinations and her closing statements challenging the credibility of each witnesses' testimony and attempting to highlight inconsistencies. Notably, during the evidentiary hearing, Ms. Love testified that at trial, she made a point to argue that the victim was not credible and that her testimony was uncontested; and Ms. Love explained that the state's closing arguments merely reflected and responded to her strategic closing statements. Resp. Ex. P at 170-72.

As such, under the deferential standard of AEDPA review, the state court's adjudication of this claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable

determination of the facts considering the evidence presented in the state court proceedings. See 28 U.S.C. § 2254(d). Ground Three is denied.

### D. Ground Four

Petitioner alleges that his trial counsel was ineffective for failing to object to the trial court's supplemental jury instruction asking the jury to either decide the case within a certain timeframe or come back the next day to continue deliberations. Doc. 1 at 14. Petitioner argues that this instruction was coercive and placed undue pressure on the jury to reach a verdict. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. P at 79. The trial court summarily denied the claim on the merits, finding as follows:

> In Ground Four, Defendant argues counsel was ineffective for failing to object to certain instructions made by the Court to the jury related to whether a resolution to the case was forthwith. Defendant cites to the following statements by the Court:
>
>> Before we bring them in, let me tell you what I was thinking. When I bring them out, I'd like to get a sense, kind of, where they are. If it's within a relatively reasonable period of time they're gonna come out with a verdict that's fine. If they're no where [sic] close, my thought is to give them the option to break for the day and come back a [sic] nine o'clock tomorrow.
>>
>> . . .
>>
>> But let me ask you this. It is going on 5:30 and you've been going at this for a couple

26

hours. I'm gonna ask when you go back if y'all will discuss amongst yourselves if you all want to stay, if you think it's possible a resolution is within a relatively reasonable period of time this evening, we'll stay here as long as y'all want. If some of y'all have things you absolutely have to do or if this is starting to create a problem and the consensus is to break for the evening, we'll be happy to do that. We'll let you go home and y'all can come back at nine o'clock tomorrow morning and go back to the jury room and finish deliberating. So when y'all go back if you'll discuss that and let the bailiff know and then we will proceed accordingly, okay.

Relying on cases related to a court's use of an <u>Allen</u>[7] charge, Defendant argues he "was entitled to a reasonable opportunity for the deliberative process to work before the Court placed added pressure on the jury to decide the case."

An <u>Allen</u> charge is an instruction given that allows a jury to continue deliberations after it has stated its inability to continue, "where there is a reasonable basis to believe a verdict is possible, while cautioning jurors that they should not abandon their views just to get a verdict or to accommodate the majority." <u>Thomas v. State</u>, 748 So. 2d 970, 977 (Fla. 1999). It can be fundamental error for a court to give[] an instruction that exceeds the limits of <u>Allen</u>, where the instruction becomes coercive in nature. <u>Id.</u> Whether the <u>Allen</u> charge given is so coercive as to constitute reversible error depends on the facts and circumstances of a particular case and the totality of the circumstances. <u>Id.</u> at 976-977.

---

[7] <u>Allen v. United States</u>, 164 U.S. 492 (1896).

> In giving an <u>Allen</u> charge, the trial court must avoid: (1) coercive deadlines, (2) threats of marathon deliberations, (3) pressure for the surrender of conscientiously held minority views, and (4) any implication of a false duty to decide. A trial court should say nothing to a jury that would influence a single juror to abandon his conscientious belief as to the correctness of his position.

<u>Gahley v. State</u>, 567 So. 2d 456, 459 (Fla. 1st DCA 1990) (internal citations omitted). After reviewing Defendant's allegations and the record, the Court finds that the trial court's statements do not amount to an <u>Allen</u> charge. <u>See</u> Fla. Std. Jury Instr. (Crim.) 4.1 (2012); <u>Bruno v. State</u>, 807 So. 2d 55, 66-67 (Fla. 2001) (finding no merit on allegation that counsel was ineffective for failing to object to a coercive instruction where counsel testified that he believed the trial court was just curious about the jury's progress and the court's tone was not a de facto <u>Allen</u> charge). Moreover, at no time did the Court restrict the jury's deliberations with an arbitrary deadline, attempt to coerce the jury to reach a verdict, or lead the jury to believe that a verdict must be reached. <u>See</u> <u>Nottage v. State</u>, 15 So. 3d 46, 50 (Fla. 3d DCA 2009); <u>Gahley</u>, 567 So. 2d at 460. The Court finds that the trial court's statements to the jury were not coercive and did not put undue pressure on the jury to bring a verdict. Therefore, an objection or motion for mistrial on this basis would have been meritless, and counsel cannot be deemed ineffective for failing to raise a meritless issue. <u>See</u> <u>Johnson</u>, 921 So. 2d at 509. Accordingly, no relief is warranted on Ground Four.

Resp. Ex. P at 226-27 (record citations omitted). Petitioner appealed the trial court's denial, Resp. Ex. Q at 14, and the First DCA per curiam affirmed the trial court's denial without a written opinion, Resp. Ex. S. As such, the Court

addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

In doing so, the Court defers to the state court's finding that the trial court's statements to the jury were not coercive. A review of the record shows that after the trial court read the final jury instructions, the jury began deliberations and eventually submitted three questions to the trial court. Resp. Ex. C at 550. Upon receipt, the trial court discussed the questions with the parties and agreed that in answering the substantive questions about how it should consider certain evidence, the trial court should only advise that the jury it must rely on its collective memory of the evidence. Id. The trial court then told the parties that it would give the jury the option to continue deliberations through the evening or come back in the morning. Id. at 551. Once the jury entered the courtroom and after the trial court addressed its questions, the trial court noted that the jury had been deliberating for a few hours already and it was close to 5:30 p.m. Id. Thus, the trial court asked the jury to go back and discuss if it wished to continue through the evening or return in the morning. Id. at 551-52. The jury returned to the jury room and promptly advised the trial court that it wished to remain and continue deliberating. Id. at 552. The jury then found Petitioner guilty of the lesser included offenses of lewd and lascivious battery and the charged offense of lewd or lascivious molestation. Id. at 553.

29

Because the trial court gave the jury the option to continue the next day and did not suggest that the jury was under a time restraint and required to reach a verdict, its statements cannot be read as unduly coercive. See, e.g., United States v. Akel, 337 F. App'x 843, 861 (11th Cir. 2009) (finding trial court's question to jury about whether it wished to continue deliberating or return in the morning was not coercive but had an opposite effect because the question implied that the jury could take as much time as it needed to reach a verdict).[8] Any objection would have been meritless, and as a result, Petitioner has failed to show that but for trial counsel's alleged error, the outcome of his trial would have been different. Under the deferential standard of AEDPA review, the state court's adjudication of this claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. See 28 U.S.C. § 2254(d). Ground Four is denied.

**E. Ground Five**

Petitioner argues that his trial attorney was ineffective for failing to move to discharge the jury panel after juror number seven had an emotional outburst

---

[8] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

when responding to voir dire questioning and the trial court did not address the outburst with the other potential jurors. Doc. 1 at 16. According to Petitioner, trial counsel should have requested that the trial court question the other potential jurors about whether they were tainted by the outburst, and counsel's failure to do so deprived Petitioner of a fair and impartial trial. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. P at 82. The trial court conducted an evidentiary hearing on this issue and then denied the claim as follows:

> In Ground Five, Defendant alleges trial counsel was ineffective for failing to move to discharge the entire jury panel when the trial court failed to conduct a voir dire examination of the remaining jury panel on the issue of possible taint. Defendant argues that counsel should have raised the issue and, in response, the trial court should have conducted an inquiry as to whether the remaining jury panel was tainted by the emotional outburst of juror number seven, when she started to cry in response to one of the prosecutor's questions. Defendant states that had counsel moved to discharge the jury panel, the trial court may have conducted a voir dire examination of the remaining jury panel. Defendant asserts that because no inquiry was made after the juror cried, he was deprived of a fair trial and impartial jury because the situation may have decreased the remaining jurors' objectivity.
>
> After reviewing Defendant's allegations, State's response, the testimony and evidence presented at the May 24, 2017 evidentiary hearing, and the record, the Court finds that, Defendant failed to demonstrate that counsel was deficient as required by Strickland. The Court finds trial counsel's testimony credible. Counsel testified that, in her experience, just because someone

answers that they have been the victim of sexual abuse, it does not necessitate asking that everyone be subject to additional voir dire or asking to discharge the entire jury panel. Counsel testified that she did not see anything in the trial transcript of jury selection that indicated that there was a reason to move to discharge the entire panel. Based on counsel's testimony at the evidentiary hearing and review of the jury selection, the Court finds reasonable that counsel would not have found it necessary to ask that everyone on the jury panel be subject to examination regarding whether the prospective juror's answer and reaction affected them or move to discharge the entire jury panel.

Further, the Court finds that had counsel raised the issue and moved to discharge the entire jury panel, there is no reasonable probability that the outcome would have been different. Defendants have a right to an impartial jury. Holt v. State, 987 So. 2d 237, 239 (Fla. 1st DCA 2008).

> The decision whether to dismiss any or all jurors lies in the sound discretion of the trial judge. It is within the discretion of the trial court to determine whether remarks made by veniremen during the examination of the panel are prejudicial; and the trial court's decision not to quash the panel will not be disturbed absent an abuse of that discretion.

Bauta v. State, 698 So. 2d 860, 861-62 (Fla. 3d DCA 1997) (quotations and internal citations omitted). Defendant failed to establish that the potential juror's remarks were prejudicial and that the trial court would have granted a motion to discharge the jury. See Stevens v. State, 251 So. 2d 565, 567 (Fla. 1st DCA 1971) (finding the trial court did not abuse its discretion in refusing to discharge all prospective jurors where one prospective juror stated she had be[en] a victim of a crime and did not feel she could be

> impartial). Defendant failed to establish that the jury was [not] impartial. <u>See</u> <u>Brower v. State</u>, 727 So. 2d 1026, 1027 (Fla. 4th DCA 1999) (finding that the defendant was not deprived a fair trial where the trial court proceeded with jurors who had not made the improper remarks and who were not shown to be otherwise tainted). The Court finds that there is nothing in the record to suggest that the jury was tainted by the potential juror's statements and crying. After that incident, the potential jurors were further questioned regarding their ability to fairly and impartially consider the evidence at trial. The prosecutor also asked, as a catch-all, whether there was anything else that gave the potential jurors pause, concern, or hesitation, and no one responded with any issues. The Court finds that Defendant has failed to demonstrate prejudice as required by <u>Strickland</u>. Accordingly, no relief is warranted on Ground Five.

Resp. Ex. P at 227-29 (record citations omitted). Petitioner appealed the trial court's denial, Resp. Ex. Q at 18, and the First DCA per curiam affirmed the trial court's denial without a written opinion, Resp. Ex. S. As such, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

During jury selection, juror number seven advised the state that she was a victim of sexual assault and revealed that she did not know if she could remain neutral if she were chosen to sit on the jury. Resp. Ex. D at 52. The transcript suggests that she was crying as she made her statement. <u>Id.</u> After individual questioning, the parties further questioned the potential jurors regarding their ability to be fair and impartial. <u>See generally</u> Resp. Ex. D. The venire was then

dismissed for lunch, and the trial court agreed to strike juror number seven for cause because of "her demeanor when answering [the state's] questions." Resp. Ex. D at 108. Later, the state and defense agreed on a panel of six jurors and one alternate. Id. at 112.

During the evidentiary hearing, Ms. Love testified that she reviewed the transcript of jury selection and nothing in the transcript gave her reason to believe that a request to discharge the panel was warranted. Resp. Ex. P at 169. She explained that in her experience doing voir dire for a sexual abuse case, it is standard to ask members of the panel if they have ever been victims of sexual abuse. Id. at 169. According to Ms. Love, if a potential juror advises that he or she is a victim of such abuse, it is not her practice to then ask everyone else in the panel if that particular juror's experience has tainted their thinking. Id. She added that if a potential juror indicates that he or she is a victim of sexual abuse, that would not be grounds to discharge the entire panel but may support a cause challenge to dismiss the one juror. Id. at 170.

Considering this record evidence, the Court finds that the state court's finding that trial counsel did not act deficiently was reasonable. Also, the continued questioning of the venire rehabilitated the jury panel following juror number seven's statements. Petitioner cannot demonstrate juror number seven's statements influenced the six jurors who were chosen to sit on the jury, and thus he cannot show that counsel's alleged error affected the outcome of his

trial. Under the deferential standard of AEDPA review, the state court's adjudication of this claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings. <u>See</u> 28 U.S.C. § 2254(d). Ground Five is denied.

### F. Ground Six

Petitioner argues that his trial counsel was ineffective for failing to convey to the state his proposed seven-year plea deal and never advising Petitioner whether the state accepted the offer. Doc. 1 at 17. Petitioner also asserts that the state made a plea offer but trial counsel never advised Petitioner of the terms. <u>Id.</u> According to Petitioner, had counsel properly conveyed the offer, he would have accepted it. <u>Id.</u>

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. P at 85-86. Following an evidentiary hearing on the claim, the trial court denied the issue as follows:

> In Ground Six, Defendant asserts that counsel was ineffective for failing to convey a plea offer. Defendant asserts that he and counsel discussed offering the State a seven year plea deal, but she never conveyed to him whether the State accepted or rejected the offer, so he assumed it was rejected. Defendant states that after the <u>Williams</u> rule hearing, counsel told him that the State had an offer, but she never conveyed what the offer was to him. Defendant states that he would have accepted the offer and the sentence under the plea would have been for less time than he received.

Based on the testimony and evidence presented at the May 24, 2017 evidentiary hearing, the Court initially finds trial counsel's testimony more credible than Defendant's testimony. The Court finds that the greater weight of the evidence establishes that counsel was not ineffective for failing to convey a plea offer. When a defendant alleges ineffective assistance of counsel based on the failure to convey a favorable plea offer, the defendant must establish prejudice by showing a reasonable probability that:

> (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Alcorn v. State, 121 So. 3d 419, 422 (Fla. 2013). [At the evidentiary hearing,] Defendant testified that on January 27, 2012, counsel told him that the State made an offer but she never told him what the offer was. Defendant further testified that he would have accepted an offer from the state that was less than the maximum if it was relayed. Counsel testified that when she took over representation of Defendant the plea negotiations to that point had not been good and in fact, they were far apart. Defendant was offering three years while the State was at fifteen years. Counsel testified that the State was using a potential case against Defendant in Duval County as part of negotiations. Counsel testified that in their discussions, Defendant stuck to making an offer to the State of seven or eight years. Counsel testified that the offer of seven or eight years was taken to the State and they rejected the offer, which she told Defendant. Counsel further testified that after the Williams rule hearing, she discussed the

36

potential of making a ten year prison [offer] followed by ten year probation offer because she thought they had a good bargaining chip with the State, but Defendant was not receptive to that offer. Counsel testified that the most he ever got to was eight years and the State was standing at fifteen years. Counsel testified that the State never relayed an offer that she did not tell Defendant and there was never an offer below fifteen years.

Defendant has failed to demonstrate that counsel failed to convey a plea offer to him. The Court finds that counsel relayed all plea offers to Defendant. Counsel not only relayed plea offers, but also attempted to formulate offers to present to the State that were less than what the State was offering. However, Defendant was not amenable to making an offer of more than seven or eight years. Counsel made that offer of seven or eight years to the State, which the State rejected, and counsel advised Defendant of the rejection. The Court further finds that, even if counsel had not advised Defendant of the fifteen year offer from the State, there is no reasonable probability that had counsel advised him of it he would have accepted the offer. Defendant would not authorize an offer higher than seven years or eight years and would not have accepted an offer of fifteen years. Accordingly, no relief is warranted on Ground Six.

Resp. Ex. P at 230-31 (record citations omitted). Petitioner appealed the trial court's denial, Resp. Ex. Q at 20, and the First DCA per curiam affirmed the trial court's denial without a written opinion, Resp. Ex. S. As such, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

In applying deference, the Court defers to the state court's consideration of the evidentiary hearing testimony, its credibility determinations, and its finding that Petitioner failed to show prejudice. In the context of a rejected plea offer, the prejudice prong requires the movant to show "a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting Lafler v. Cooper, 566 U.S. 156, 164 (2012)). But "after the fact testimony concerning [the movant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991).

Here, even if the Court assumes that trial counsel acted deficiently, Petitioner has not shown a reasonable probability that absent counsel's alleged misconduct, Petitioner would have accepted the state's plea offers and the state would not have withdrawn the offers given intervening circumstances. At the evidentiary hearing, Petitioner testified that prior to Ms. Love's representation, he was represented by J.R. Haslett, and during Mr. Haslett's representation,

the state made several plea offers, including a "20 and 10" offer, a "15 and 5" offer, and a final "10 and 10" offer. Resp. Ex. P at 142, 151. Petitioner explained that when the state made these offers, it advised him that if he rejected the offers and proceeded with deposing the victim, the state would not be making any further plea offers in the case. Id. at 151-52. Petitioner admits that he was advised of the state's conditions but knowingly rejected the state's offers anyway. Id. at 152. Petitioner also admitted that when he rejected these offers, he knew he faced a thirty-year term of incarceration if he was convicted of the charged offenses. Id. at 142. Petitioner explained that when Ms. Love began representing him, she only mentioned a state offer one time, which was following the Williams Rule hearing, but she never advised him of the terms of the offer. Id.

Ms. Love testified at the evidentiary hearing that Petitioner asked her to make a seven or eight-year plea offer to the state, but the state rejected that offer when she conveyed it to the prosecutor. Id. at 163. Following the Williams Rule hearing, she tried to convince Petitioner to make a ten-year offer, but he was not receptive to the idea and the highest offer he would make was an eight-year deal, which she knew the state had rejected. Id. at 165-66.

Given the parties' widely divergent positions on any negotiated plea deal and sentence, Petitioner has not shown a reasonable probability that a plea agreement would have been reached and accepted by the trial court. Although

Petitioner may have been interested in pleading guilty, "[g]iven [Petitioner's] awareness of the plea offer[s], his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer[s]." <u>Diaz</u>, 930 F.2d at 835. Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Six is denied.

### G. Ground Eight[9]

Petitioner argues that his trial counsel was ineffective for failing to obtain evidence that would have supported his defense. Doc. 1 at 18. He asserts that the state had to prove that the offenses occurred between December 1, 2009, and December 31, 2009, but the victim's mother testified that she received the phone call from her daughters reporting the abuse while she was driving to the bank in her white van. <u>Id.</u> According to Petitioner, however, that van was scrapped at the recycling compound before December 1, 2009, and had counsel

---

[9] In the Petition, Petitioner appears to inadvertently skip over a "Ground Seven" and instead jumps from "Ground Six" to "Ground Eight" and then to "Ground Nine." Doc. 1 at 17-18. Petitioner raises a total of eight grounds in his Petition, however, for consistency purposes, the Court labels the Grounds using the nomenclature Petitioner uses in his Petition and Reply.

obtained the receipt from the recycling center, it would have corroborated his

defense theory. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. P at 89.

Following an evidentiary hearing, the trial court denied the claim as follows:

> In Ground Eight, Defendant asserts that counsel
> was ineffective for not obtaining a receipt from a
> recycling company, which would have supported his
> theory of defense. Defendant contends that the State
> was required to prove that the crime occurred between
> December 1, 2009, and December 31, 2009. The
> testimony of the victim's mother was that she drove to
> the bank in a white van. Defendant states that the
> white van was scrapped at a recycling company before
> December 1, 2009, and a receipt would have
> corroborated his theory that the victim and others were
> lying. Defendant states that had counsel retrieved the
> receipt there is a reasonable probability that the
> outcome would have been different.
>
> After reviewing Defendant's allegations, State's
> response, the testimony and evidence presented at the
> May 24, 2017 evidentiary hearing, and the record, the
> Court finds that Defendant has failed to demonstrate
> prejudice. The Court finds that had counsel retrieved
> the recycling receipt there is no reasonable probability
> that the outcome would have been different. [At the
> evidentiary hearing,] Defendant testified that the
> recycling receipt was necessary because it would have
> established that the State had not proven that the
> alleged crimes occurred between December 1, 2009, and
> December 31, 2009. Counsel testified that the receipt
> would be collateral and would have only impeached the
> credibility of the witness, if it was even admissible.
>
> First, the Court finds that Defendant has not
> demonstrated that a recycling receipt for the white van
> existed or that it would show that the van was scrapped

41

prior to December 2009. Even if there was a recycling receipt showing that the van was scrapped prior to December 2009, it would not have conclusively proven that the crime did not occur in December 2009 or that the crime did not occur at all. Rather, it would have gone to the victim's mother's credibility about when the crime occurred and been helpful in creating doubt about when the crime occurred. However, counsel sufficiently cross-examined the victim's mother on the issue of when the crime occurred. Counsel also pointed out the conflicts in the testimony of the witnesses regarding when the crime occurred during closing arguments. The jury, therefore, was presented with information attacking the time period of when the witness stated the crime occurred. The Court finds that the impeachment conducted by counsel already weakened the victim's mother's testimony on the point of when the crime occurred and therefore, the Court's confidence in the outcome of the proceedings is not undermined. Accordingly, no relief is warranted on Ground Eight.

Resp. Ex. P at 232-34 (record citations omitted). Petitioner appealed the trial court's denial, Resp. Ex. Q at 21, and the First DCA per curiam affirmed the trial court's denial without a written opinion, Resp. Ex. S. As such, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

In doing so, the Court finds reasonable the state court's determination that the receipt would merely serve as impeachment evidence. And as the state court pointed out, during trial counsel's cross-examination of the victim's mother, the mother testified that she did not remember the exact date that her daughters called her and reported the abuse. Resp. Ex. C at 408. Indeed, she

admitted that when she was first questioned about the incident, she could not even remember the month that the incident happened. Id. She never denied being unsure about when exactly the offense occurred and therefore the alleged receipt would have been cumulative to testimony and evidence already before the jury. As such, Petitioner cannot demonstrate that but for trial counsel's alleged error, the outcome of his case would have been different.

Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Eight is denied.

### H. Ground Nine

Petitioner argues that his trial counsel was ineffective for failing to argue that his two convictions for lewd or lascivious battery violated his double jeopardy rights. Doc. 1 at 19. He contends that the evidence "shows that the victim was sexually battered in a single location, in or on the same body part, in a short period of time, with no distinct act" distinguishing the two offenses. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. P at 90. Following an evidentiary hearing on the issue, the trial court denied the claim as follows:

In Ground Nine, Defendant alleges that counsel was ineffective for failing to argue that Defendant's two convictions of lewd and lascivious battery were precluded under double jeopardy principles. Defendant argues that the crimes occurred contemporaneously to each other and it was part of a single criminal episode. Defendant asserts that if counsel had raised this issue there is a reasonable probability that Defendant would have been acquitted of one of the two convictions.

After reviewing Defendant's allegations, State's response, the testimony and evidence presented at the May 24, 2017 evidentiary hearing, and the record, the Court finds Defendant's two convictions for Lewd or Lascivious Battery on Counts One and Two do not violate double jeopardy principles. To determine if a double jeopardy violation has occurred, courts must consider whether:

> the charges were based on an act or acts which occurred within the same criminal transaction and/or episode. If the charge did occur during the same transaction or episode, we must then determine if the convictions were predicated on distinct acts. If the charges are not predicated on distinct acts and have occurred within the same criminal episode, we must next decide if the charges survive a same elements test as defined by section 775.021, Florida Statutes (2008).

Partch v. State, 43 So. 3d 75 8, 760 (Fla. 1st DCA 2010).

The Florida Supreme Court has explained that "sexual acts of a separate character and type requiring different elements of proof . . . are distinct criminal acts that the Florida Legislature has decided warrant multiple punishments." State v. Meshell, 2 So. 3d 132, 135 (Fla. 2009) ("[T]he same double jeopardy analysis for the sexual battery also applies to the lewd and

lascivious battery statute."). "[T]he sex acts proscribed in section 800.04(4) (oral, anal, or vaginal penetration) are of a separate character and type requiring different elements of proof and are, therefore, distinct criminal acts." Id. at 136. Sexual activity is defined as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object." Fla. Stat. § 800.04(1)(a) (2009).

In the instant case, Count One involved lewd or lascivious battery based on penile penetration of or union with the victim's vagina, while Count Two involved lewd or lascivious battery based on the victim's vagina being penetrated by Defendant's finger. The victim testified to each of these separate acts. Because these acts were of a separate character and type requiring different elements of proof, they are distinct criminal acts. Therefore, there is no double jeopardy violation and counsel cannot be ineffective for failing to make such an argument. See Johnson, 921 So. 2d at 509. Accordingly, no relief is warranted on Ground Nine.

Resp. Ex. P at 234-35 (record citations omitted). Petitioner appealed the trial court's denial, Resp. Ex. Q at 24, and the First DCA per curiam affirmed the trial court's denial without a written opinion, Resp. Ex. S. As such, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

"The Double Jeopardy Clause . . . protects against multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165 (1977) (internal quotation marks and citation omitted). The Double Jeopardy Clause permits cumulative punishments for a single incidence of criminal behavior when the

legislature clearly intends cumulative punishments. <u>Williams v. Singletary</u>, 78 F.3d 1510, 1512 (11th Cir. 1996). The Florida legislature has made clear its intent that a defendant be convicted and sentenced "for each criminal offense committed in the course of one criminal episode or transaction." <u>See</u> § 775.21(4)(b), Fla. Stat. And as the state court noted, Florida courts find that sexual batteries of a separate character and type warrant multiple punishments even if the offenses occur during the same criminal episode. <u>See, e.g.</u>, <u>Duke v. State</u>, 444 So. 2d 492 (Fla. 2nd DCA 1984) (vaginal penetration followed a moment later by anal penetration were two distinct acts of criminal sexual battery). Here, Petitioner's conviction for count one was based on Petitioner's sexual organ contacting or penetrating D.C.'s vagina and count two was based on Petitioner's digital penetration of D.C.'s vagina. Resp. Ex. A at 89. The victim testified about these two separate acts. Resp. Ex. B at 339.

Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Nine is denied.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.      The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[10]

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of February, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

---

[10] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

Jax-7

C:    Tyrone D. Blackshear, Sr., #J46616
       counsel of record